# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MICHAEL D. HILL,                        )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )       Civil Action No. 07-2085 (ESH)
                                        )
PRESTON M. GEREN, III,                  )
Secretary of the Army, *et al.*,        )
                                        )
                    Defendants.         )
_____)

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff, a veteran of the Air Force and the Army National Guard who was recalled to active duty in 2006, brought this action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, for judicial review of the August 16, 2007 denial by the Army Board for Correction of Military Records ("ABCMR" or "the Board") of his *pro se* application to correct his military record to reflect his promotion to colonel. By Minute Order dated January 18, 2008, this Court granted defendants' consent motion for a voluntary remand to the Board so that it could further analyze and discuss the competing Army regulations surrounding plaintiff's retirement and promotion. Upon reconsideration, the ABCMR issued an opinion on May 13, 2008, again denying plaintiff's request to correct his military records to reflect his promotion. Plaintiff then filed an amended complaint challenging the Board's decision on reconsideration. For the reasons explained herein, defendant's motion for summary judgment will be denied and plaintiff's cross-motion for summary judgment will be granted, and the case will be remanded to the ABCMR for reconsideration in light of this Memorandum Opinion.

## BACKGROUND

Plaintiff Michael D. Hill was originally commissioned as an Air Force officer and began active federal service ("AFS") on January 24, 1973.  (Administrative Record ["A.R."] 5, 165.) In 1982, plaintiff was honorably discharged from the Air Force in Guam, joined the Guam Army National Guard as a captain, and was ordered to active duty in Active Guard Reserve ("AGR") status.  (A.R. 37, 159-65.)  In 1984, plaintiff was promoted to major.  (A.R. 158.)  Around that time, he also began working at the National Guard Bureau ("NGB") office in Washington, DC, first as a Plans and Programs Officer (A.R. 118), and later as a Personnel Staff Officer, Management Information Systems Administrator, and Program Analyst.  (*See* A.R. 97, 110, 112.)  In 1990, plaintiff was promoted to lieutenant colonel, and in 1991, he was separated from the Guam Army National Guard and joined the New York Army National Guard ("NYARNG"). (A.R. 37, 144-46.)  From 1991 through 1994, plaintiff continued to serve as an AGR officer with the NGB in Washington in various capacities, including as the Assistant Executive to the Chief of the NGB.  (A.R. 87-96.)  Plaintiff's duties during those years included preparing speeches and policies, assisting the Chief in his role as advisor to the Chiefs of Staff for the Army and Air Force, and serving as a liaison to federal, state, and local government officials to ensure their understanding of National Guard missions, policies, and priorities.  (*See id.*)  As a lieutenant colonel, plaintiff consistently received superior performance evaluations that urged that he be retained on active duty and promoted to colonel.  (*See* A.R. 87-98.)

At the time, regulations required AGR commissioned officers on active duty (such as plaintiff) to retire after completing 20 years of AFS unless they received an extension of their service.  *See, e.g.*, Army Regulation ("Army Reg.") 135-18 ¶ 4-12 (July 1985) ("All AGR officer

personnel will be released from active duty or full-time duty when they have attained 20 years

and 1 month of qualifying service for retirement purposes . . . unless they have been approved

for voluntary retention in accordance with A[rmy] R[egulation] 635-100.") (Ex. B to Defs.' Mot.

for Summ. J. ["Defs.' Mot."].)  Because plaintiff received his commission on January 24, 1973,

January 24, 1993 was the approximate date on which he reached 20 years of AFS.  (*Cf.* A.R. 82

(noting that plaintiff had completed 22 years and 8 days of AFS on January 31, 1995).)  On June

24, 1992, the Secretary of the Army extended plaintiff's active duty commitment to December

31, 1993.  (A.R. 140 (Secretary's orders); *see also* A.R. 5.)  Although plaintiff was subsequently

ordered to retire effective January 1, 1994, those orders were later rescinded.  (A.R. 6.)  On

March 10, 1994, plaintiff received new orders that further extended his active duty commitment

with the NGB for a "[v]oluntary, [i]ndefinite" period.  (A.R. 133-34 (Secretary's orders); *see

also* A.R. 6.)

From July through August of 1994, the Reserve Component Selection Board ("RCSB")

convened and selected the plaintiff (and others) for promotion to colonel.  (A.R. 37.)  On

October 14, 1994, the NGB received a memorandum notifying it that plaintiff had been selected

for promotion, with a "Promotion Eligibility Date" ("PED") of June 5, 1995.[1]  (A.R. 6, 16.)

However, plaintiff did not receive a copy of that memorandum or its instructions until August

28, 2007.  (A.R. 16.)  In October 1994, unaware that he had been selected for promotion,

plaintiff requested voluntary retirement and was placed on transitional leave as of November 14,

1994, with an effective date of retirement of January 31, 1995.  (A.R. 18, 82.)  Due to

_____

[1] The PED is "[t]he date the officer meets the eligibility criteria for promotion to the next higher grade."  Army Reg. 135-155 ¶ 4-15*a* (Sept. 1994) (Ex. A to Defs.' Mot.).

administrative error, plaintiff's effective date of retirement was incorrectly registered as November 14, 1994, and he was transferred prematurely on that date to the Retired Reserve. (A.R. 6, 18, 66.).

On November 17, 1994, the RCSB's list of promotion selections was forwarded to the U.S. Senate for confirmation. (A.R. 6.) The list was published shortly thereafter in the Army Times, where plaintiff learned of his selection for promotion for the first time. (A.R. 16.) Plaintiff immediately contacted the NGB and NYARNG regarding his promotion and, on January 4, 1995, submitted the necessary paperwork to the NGB. (*Id.*) The NGB recommended to NYARNG that plaintiff be promoted to colonel in the Army National Guard with an assignment at the NGB, and on January 20, 1995, NYARNG recommended that plaintiff's promotion be approved. (A.R. 6-7, 37, 68-71, 73-74.) On January 25, 1995, the NYARNG's Adjutant General issued orders promoting plaintiff to colonel, with payment at his new grade conditioned upon federal recognition of the promotion. (A.R. 67.)

On January 27, 1995, the NYARNG issued a correction to plaintiff's separation documents, reflecting that his retirement was effective January 31, 1995, and not (as previously recorded) November 14, 1994. (A.R. 66.) On January 31, 1995, plaintiff received an honorable discharge for voluntary retirement from active duty service with 22 years and 8 days of AFS, pursuant to Chapter 4 of Army Reg. 635-100. (*See* A.R. 6, 37, 65, 82; Am. Compl. ¶ 16.)[2] Plaintiff was transferred to the Retired Reserve list effective February 1, 1995. (A.R. 82.) The

---

[2] The Board's decision on reconsideration states that upon his retirement, plaintiff "had completed 24 years and 8 days of AFS." (A.R. 7.) The Court assumes that this is an error, in light of the references in the amended complaint and elsewhere to the fact that plaintiff retired with 22 years and 8 days of AFS.

Senate confirmed the RCSB's 1994 promotion selections on February 6, 1995.  (A.R. 7.)  In April 1995, the NGB informed NYARNG that because plaintiff had retired prior to Senate confirmation of his promotion, NYARNG could not legally have promoted plaintiff.  (A.R. 63.)  Accordingly, plaintiff was never promoted to colonel.

On February 14, 2006, plaintiff was recalled from retirement to active duty, in the rank of lieutenant colonel, with the U.S. Army Human Resources Command in support of Operation Noble Eagle.  (A.R. 128.)  On December 28, 2006, plaintiff requested that the ABCMR correct his military records to reflect that he was promoted to colonel prior to his retirement in 1995.  (*See* A.R. 55-58; *see also* A.R. 18-19.)  The ABCMR sought an advisory opinion from the NGB, which recommended that plaintiff be deemed to have retired as a colonel effective January 31, 1995.  (A.R. 48.)  However, on August 16, 2007, the ABCMR denied plaintiff's request for a records correction.  (A.R. 33-43.)  The ABCMR reasoned that plaintiff was ineligible for promotion because "he was not in an active status" when the Senate confirmed the promotion board's selections.  (A.R. 42.)  The ABCMR's denial also stated that plaintiff's retirement upon 20 years of AFS was "mandated, with or without the promotion . . . ."  (*Id.*).

Plaintiff thereafter filed his initial complaint with this Court on November 13, 2007, seeking judicial review of the ABCMR's decision.  On January 18, 2008, the Court granted the parties' consent motion to voluntarily remand the case so the ABCMR could reconsider several of the plaintiff's alternative arguments.  On remand, plaintiff again argued that Army Reg. 635-100 ¶ 4-12*e* (May 1989) permitted him to withdraw his pending retirement application and accept his promotion (A.R. 4, 16), and that but for his erroneous placement on the retired list on November 14, 1994, instead of January 31, 1995, the Army "should have offered [him] the

opportunity to accept the promotion and continue active service as required by Army

regulation."  (A.R. 15; *see also* A.R. 18-19 (requesting retroactive promotion due to "'perfect

storm' of administrative failures")).)

On May 13, 2008, the ABCMR issued its decision on reconsideration, once again

denying plaintiff's application to correct his military records.  (A.R. 1-14.)  The Board indicated

that because plaintiff "was on active duty in an AGR status[,] his retirement was required by

regulation," because the Army had a "20-years-of-AFS-and-retire policy" for AGR officers.

(*See* A.R. 10-11.)  The Board concluded that if plaintiff had been a "reasonably prudent senior

commissioned officer" who kept himself "well-informed" about his future in the AGR program,

"he should have known that he was not going to be offered any further waivers" of the retirement

policy.  (A.R. 11.)

On August 1, 2008, plaintiff filed an amended complaint [Dkt. # 12] challenging the

Board's decision as arbitrary and capricious, an abuse of discretion, or otherwise not in

accordance with the law.  (Am. Compl. ¶ 51.)  The amended complaint requested that the

Board's decision be vacated and that the Court order the U.S. Army to retroactively promote the

plaintiff to colonel.  (*Id.* ¶ 53.)  On September 19, 2008, defendants moved for summary

judgment [Dkt. # 16], and on November 17, 2008, plaintiff cross-moved for summary judgment

[Dkt. # 20] and requested that the Court set aside the ABCMR's May 13, 2008 decision and

remand for further adjudication.

**ANALYSIS**

## I.   LEGAL STANDARD

The Secretary of the Army may act through a civilian board to correct any Army record when he "considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  Courts review the decisions of military corrections boards "under an 'unusually deferential application of the arbitrary or capricious standard' of the Administrative Procedures Act."  *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).  A party seeking review of a Board decision bears the burden of overcoming "'the strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith.'"  *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (quoting *Collins v. United States*, 24 Cl. Ct. 32, 38 (1991), *aff'd*, 975 F.2d 869 (Fed. Cir. 1992)).  Courts must "defer to the Board's decision unless it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence."  *Id.* at 176; *see generally* 5 U.S.C. § 706(2).

"'An agency's discretionary order [will] be upheld, if at all, on the same basis articulated in the order by the agency itself.'"  *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)).  The Board's decision need not be "a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)).  "The court, therefore, must be able to conclude that the Board 'examine[d] the relevant data and articulate[d]

a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  *Kreis*, 406 F.3d at 686 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  For this reason, "[a]ppellate counsel's post hoc rationalizations" cannot substitute for an agency's failure to articulate this rational connection. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1276 (D.C. Cir. 2005).

## II.    LEGAL ANALYSIS

Although the amended complaint featured a variety of allegations and requests for relief, plaintiff's cross-motion for summary judgment contends only that the ABCMR's decision on reconsideration "is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law and that plaintiff has submitted a justiciable claim that requires remand to the ABCMR for readjudication."  (Pl.'s Opp'n & Cross Mot. for Summ. J. ["Pl.'s Mot."] at 18.) Both parties have narrowed their arguments to focus on issues relating to waivers of the retirement policy and the utility of a remand.

In addressing these questions, the Court's inquiry focuses not on whether the Army was "substantively correct" in declining to retroactively promote plaintiff, but rather on whether the ABCMR's explanations for that choice demonstrate that defendants "permissibly exercised [their] discretion and made a choice that is supported by at least substantial evidence."  *Homer v. Roche,* 226 F. Supp. 2d 222, 226 (D.D.C. 2002) (finding that military board did not provide adequate explanation for its denial of plaintiff's request for promotion to colonel).  In order to prevail here, the ABCMR's decision must provide reasons "'that the Court can measure, albeit with due deference,' against the standard of the APA."  *Id.* (quoting *Kreis*, 866 F.2d at 1514-15).

On the basis of the record before the Court, the ABCMR's stated reasons for denying plaintiff's

application are not supported by substantial evidence and do not demonstrate a "'rational

connection between the facts found and the choice made.'" *Frizelle*, 111 F.3d at 176-77 (quoting

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

### A.     Relevant Regulations

Plaintiff argues that if had he received adequate notice of his selection for promotion,

Army regulations would have permitted him to withdraw his then-pending October 1994

retirement application, remain on active duty, and accept his promotion to colonel.  (Pl.'s Mot. at

12-15; Pl.'s Reply at 5.)  Plaintiff points to Army Reg. 635-100 ¶ 4-12*e* (May 1989) (Ex. C to

Defs.' Mot.), which provided that "[a]n officer who has an approved retirement pending, and

who subsequently is selected for promotion, has the option to withdraw his or her retirement

application and accept the promotion," and Army Reg. 135-155 ¶ 4-14*a* (Sept. 1994) (Ex. A to

Defs.' Mot.), which provided that

> AGR officers who have been selected for promotion and are not assigned to a
> position calling for a higher grade will remain on the promotion list and serve on
> [active duty] in the AGR program until they are . . . [p]romoted to the higher
> grade following reassignment to an AGR position calling for the higher grade.

The Board's decision did not challenge the validity of Army Reg. 635-100 ¶ 4-12*e*.

Rather, the Board reasoned that plaintiff was not permitted to accept any promotion at all

because "his retirement was required by regulation."  (A.R. 10.)  The Board cited no authority

for that proposition, but it may have been relying on one of three regulations referenced earlier in

its decision.  (*See* A.R. 7-8.)  The first regulation, Army Reg. 135-18 ¶ 4-11*c* (July 1985),

provided that "AGR personnel . . . will be retained on active duty or full-time duty until

attainment of 20 years of service qualifying for retirement unless the release is voluntary or

approved by the Secretary of the Army."  The second regulation, Army Reg. 135-18 ¶ 4-12,

provided that

> [a]ll AGR officer personnel will be released from active duty or full-time duty
> when they have attained 20 years and 1 month of qualifying service for retirement
> purposes . . . unless they have been approved for voluntary retention in
> accordance with AR 635-100. . . . NGB and OCAR will establish procedures for
> selecting officers for retention after completing 20 years of creditable retirement
> service when the needs of the Service dictate.

The ABCMR explained that the third regulation, National Guard Regulation ("NG Reg.") 600-5

¶ 5-4 (Feb. 1990) (Ex. H to Defs.' Reply), mandated that "AGR commissioned and warrant

officers will retire after completing 20 years AFS unless extended by proper authority."  (A.R. 7

(summarizing NG Reg. 600-5 ¶ 5-4).)  That regulation also required that waiver requests be

forwarded to the Chief of the NGB for "final determination by the Secretary of the Army."  NG

Reg. 600-5 ¶ 5-4*a*(1).

### B.     The ABCMR's Conclusion that Plaintiff Would Not Receive a Waiver of the Retirement Policy

Assuming that plaintiff had been required to retire in late 1994, the Court finds that the

Board lacked a substantial basis for concluding that plaintiff, if he were a "reasonably prudent

senior commissioned officer," "should have known" that he would not be able to obtain "any

further waivers" of the retirement policy.[3]  (A.R. 11.)  The Board's decision states:

---

[3] It is unclear whether any "further" waivers were actually necessary.  As the Board itself
recognized, plaintiff already received a waiver on March 10, 1994, ordering him to active duty
with the NGB "for an indefinite period."  (A.R. 6.)  This seems to contradict the Board's
conclusion that plaintiff was required to retire in late 1994.  (*See also* Pl.'s Reply at 3 & n.1
(arguing that Board misconstrued his reference to "routinely granted" waivers as "'implying that
he should have been granted another extension'" (quoting A.R. 10), when in fact he "had already
received a waiver to remain on active duty" beyond 20 years of AFS).)  In this regard, the
Board's decision appears to "fail[] to grapple with what appears to be a substantial issue,"
*Roberts v. Harvey,* 441 F. Supp. 2d 111, 122 (D.D.C. 2006), since it is unclear if any waiver was
needed.  Hopefully, on remand the Board will clarify this issue.  However, even if plaintiff was

2. . . . [Plaintiff] had already received at least one waiver to remain on active duty beyond the normal limit of 20 years of AFS.  He contended that waivers to the AGR 20-years-of-AFS-and-retire policy were routinely granted, as was done in his case following his initial 31 December 1993 separation from the NYARNG.  It appears he was implying that he should have been granted another extension.

3.  The applicant was attached to the NGB in Washington, DC, the same attachment he had at the time his earlier waiver was granted.  He was not in an outlying organization that may not have been aware that waivers could be granted.  As a senior commissioned officer, it is reasonable to believe that he kept himself well-informed concerning his future in the AGR program.  If he kept himself well-informed, as a reasonably prudent senior commissioned officer would have done, he should have known that he was not going to be offered any further waivers.

(*Id.*)

The Court is unable to discern the Board's reasoning on this issue.  As an initial matter, the Board neither defined nor provided any legal authority to support its application of the "reasonably prudent officer" standard.  There is nothing in the Board's decision to explain whether that standard (or any standard of "reasonable care") is relevant to this type of analysis.  But even assuming *arguendo* that the "reasonably prudent officer" standard is definable or is applicable, the Board's conclusion that plaintiff "should have known that he was not going to be offered any further waivers" does not follow from its observations that plaintiff was serving in the same office where he had successfully obtained a prior waiver and that he presumably "kept himself well-informed concerning his future in the AGR program."  (A.R. 11.)

Defendants argue that the Board's conclusion was reasonable because the Board "placed greater weight on the regulatory policy" that generally mandates retirement after 20 years of

---

still required to retire in late 1994 notwithstanding his March 1994 waiver, this would not affect the Court's grounds for remand: that the Board failed to support or explain its conclusion that plaintiff "should have known that he was not going to be offered any further waivers" of that policy.  (A.R. 11.)

AFS.  (Defs.' Reply at 3.)  That argument appears nowhere in the Board's decision, contrary to

the "'fundamental rule of administrative law'" that this Court must judge the Board's decision

solely by the grounds invoked by the Board.  *Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C.

2008) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (rejecting Secretary's

explanation of ABCMR action where ABCMR failed to provide explanation itself).  But even if

the Court were to consider defendants' argument, the "regulatory policy" at issue clearly holds

out the possibility of receiving "approv[al] for voluntary retention" beyond 20 years of AFS.

Army Reg. 135-18 ¶ 4-12.  Nor is there any evidence to suggest that plaintiff was disqualified, as

a matter of law, from obtaining such approval.

  In addition, the Court cannot find substantial evidence in the record to support the

Board's apparent factual conclusion that plaintiff "was not going to be offered any further

waivers."  (A.R. 11.)  The Board acknowledged that plaintiff already received "at least one

waiver" of the retirement policy (A.R. 10) when his January 1, 1994 retirement order was

revoked and his active duty commitment was extended on March 10, 1994 "for an indefinite

period."  (A.R. 6.)  The Board's decision also shows that this was not the first time plaintiff's

duty commitment had been extended to let him serve beyond 20 years of AFS; the first such

extension actually came via "[o]rders, dated June 24, 1992, [that] extended the applicant's Title

10 AGR active duty commitment to 31 December, 1993."  (A.R. 5.)  Yet, without any

explanation or supporting evidence, the Board appears to have concluded that the prior

extensions of plaintiff's service beyond 20 years of AFS categorically prevented him from

obtaining a future waiver pursuant to the regulations.

  In an effort to support their conclusion, defendants point to plaintiff's "admission" that

extensions for NGB AGR officers beyond 20 years of AFS "were the exception" in fiscal year 1995, and that hiring freezes, personnel releases, and promotion limits "significantly reduced the career progression of many AGR Title 10 officers . . . ."  (Defs.' Reply at 6 (quoting A.R. 57) (ellipsis in defendants' reply only); *see also* Defs.' Mot. at 21-22 n.21.)  The Board did not cite this part of the record to support its reasoning, and instead expressly acknowledged plaintiff's contrary contention that waivers were "routinely granted."  (A.R. 10.)  However, the Court will presume both that the Board considered plaintiff's claims regarding reductions in officer retention and promotion, and that plaintiff's claims were factually accurate.  Even so, plaintiff's claims indicate that waivers, although *limited*, were not eliminated, and thus, there is no basis to conclude, as the Board did, that plaintiff was incapable of receiving a waiver.  *Cf. Homer*, 226 F. Supp. 2d at 226 ("Merely pointing out that the selection process was competitive provides no actual reason for denying a promotion to any particular candidate.").  Further, the ellipsis in defendants' quotation of plaintiff's claims obscures that plaintiff had presented these personnel trends to describe the situation "at the time [he] was selected for promotion."  (A.R. 57.)

The Board's failure to provide a discernable rationale is "especially troubling" given that it also failed to respond to the significant record evidence that was extremely "favorable to plaintiff's bid for promotion" and would have provided ample support for his efforts to obtain a waiver -- namely, plaintiff's consistently high performance evaluations from his NGB superiors, including the Chief of the NGB, urging plaintiff's retention on active duty and promotion to colonel.  *Cf. Homer*, 226 F. Supp. 2d at 226 ("The Air Force's silence is especially troubling in light of the fact that it nowhere responds to the evidence in the record that was favorable to plaintiff's bid for promotion -- specifically, the 'definitely promote' recommendation on

-13-

plaintiff's July 1995 [Performance Recommendation Form] and the numerous letters . . . from

other officers . . . who had first-hand knowledge of [plaintiff's] work and professional

demeanor." (citations omitted)).  If plaintiff had indeed "kept himself well-informed concerning

his future in the AGR program," the record shows that even if he "should have known" that

waivers of the retirement policy were exceptions to the rule, his superiors considered him to be

an exceptional candidate:

> •       This officer is clearly the quintessential role model for others to emulate in
> the Army.  LTC [lieutenant colonel] Hill is very simply the best Army officer I
> have observed in the military today. . . . Promote this soldier to Colonel now.
> (A.R. 88 (1994-95 Evaluation). )
>
> •       LTC Hill has unlimited promotion potential.  He is being groomed to take
> my place as Executive to the Vice Chief, National Guard Bureau. . . .  We can't
> afford to lose his unique talents and abilities.  We must retain him for a key NGB
> leadership position.  We need him to fill a critical NGB position now . . .
> PROMOTE IMMEDIATELY. . . . He could serve immediately as Colonel, O-6,
> Executive to Chief, National Guard Bureau."  (A.R. 90 (1993-94 Evaluation)
> (second ellipsis in original).)
>
> •       LTC Hill has an unlimited potential for advancement. . . . He is an officer
> we can't afford to lose. . . . Extend him, send to resident senior service college
> and promote immediately.  Then assign him our toughest jobs -- he'll make it
> happen. (A.R. 92 (1992-93 Evaluation).)
>
> •       LTC Hill should be extended on active duty, enrolled in a resident senior
> service college and promoted immediately. . . . Promote him and keep him -- we
> need more senior officers of his caliber in the National Guard.  (A.R. 94 (1991-92
> Evaluation).)
>
> •       Typically, LTC Hill operates at the genius level. . . . I highly recommend
> his continued retention on active duty, assignment to positions of increased
> responsibility, and promotion to Colonel at the earliest date.  (A.R. 96 (1990-91
> Evaluation).)

Notably, plaintiff's final four evaluations were co-authored by the Chief or Acting Chief of the

NGB (A.R. 87, 89, 91, 93) -- the very officer who would have processed any waiver request that

plaintiff might have submitted.  *See* NG Reg. 600-5 ¶ 5-4*a*(1).

-14-

Taken together, the record indicates that in 1994, at a time when increasingly fewer officers were being retained or promoted, plaintiff was ordered to active duty for an "indefinite" period, was selected for promotion to colonel, and received a performance evaluation urging his retention on active duty that was co-authored by the very official responsible for processing waiver requests.  (*See* A.R. 90 (1993-94 evaluation comments by Acting Chief of NGB).)  Based on this record, and in the absence of any discernable rationale from the ABCMR, the Court finds that the Board acted arbitrarily in denying plaintiff's application on the ground that "he should have known that he was not going to be offered any further waivers" to remain on active duty long enough to accept his promotion.  *See also Dickson*, 68 F.3d at 1408 (Silberman, J., concurring in part and dissenting in part) ("To be sure, we will not typically accept an agency decision that is unaccompanied by an explanation adequate to permit us to understand the agency's reasoning.").

### C.      Defendants' Argument That Remand Would Be Futile

Defendants also argue that even if plaintiff had received a waiver to remain on active duty in 1995, remand is unnecessary because the ABCMR concluded that plaintiff "could not have accepted the promotion unless he performed the job in a colonel's position."  (Defs.' Reply at 8.)  It is clear that regulations in effect at the time did indeed condition acceptance of a promotion upon service in a promotion-grade position.  But it is not inconceivable that the ABCMR might, during readjudication, decide to award plaintiff a retroactive promotion in light of the administrative errors surrounding his undisputed selection by the 1994 RCSB for a promotion to colonel.

As explained by defendants and the Board's decision, Army regulations established

multiple possible "effective dates" of promotion (*i.e.*, the dates on which officers would become "eligible for pay and allowances in the higher grade") for AGR officers such as plaintiff. (Defs.' Mot. at 10 (discussing Army Reg 135-155 ¶ 4-19*d*); A.R. 9 (same).) If plaintiff had already been serving in a "higher graded position" (*i.e.*, already doing a colonel's job), then the promotion would have been effective on plaintiff's previously designated Promotion Eligibility Date of June 5, 1995. *See* Army Reg 135-155 ¶ 4-19*d*. But because plaintiff was not yet serving in a colonel's position, his promotion would have become effective on the date he was re-attached to a colonel's position, assuming he had stayed in active duty AGR status. *See id.*

Plaintiff contends that if he had received proper notice of his selection for promotion and had been permitted to withdraw his retirement request, he could have remained on active duty in AGR status, sought a colonel's position,[4] and accepted his promotion. (*See* Pl.'s Reply at 5 (citing Army Reg. 135-155 ¶ 4-14*a*).) Defendants argue that "[i]n the absence of any new evidence, there is no reason to believe that the ABCMR would evaluate the Plaintiff's entitlement to a retroactive promotion any differently than it did in response to his original application and request for reconsideration." (Defs.' Mot. at 31.) However, as the Court has already noted, the Board's decision on reconsideration was inadequately explained, unsupported by substantial evidence, and failed to respond to favorable evidence that could well have supported a different decision regarding plaintiff's eligibility for a waiver of the retirement policy.

The Court expresses no opinion as to the likelihood of whether, on remand, the Board

---

[4] Notably, the Acting Chief of NGB wrote in plaintiff's 1993-94 performance evaluation that plaintiff "could serve immediately as Colonel, O-6, Executive to Chief, National Guard Bureau." (A.R. 90 (senior rater's comments).)

might find it "appropriate" to exercise its powers to "direct[] or recommend[]" a correction of

plaintiff's military records "to remove an error or injustice."  32 C.F.R. § 581.3(c)(2)(i); *see also*

*Sonnenfeld v. United States*, No. 03-1345, 2005 WL 6112632, at *4  (Fed. Cl. Apr. 27, 2005)

("[T]he ABCMR possesses broad equitable powers to change any military record to 'correct an

error or remove [an] injustice.'" (quoting 10 U.S.C. § 1552(a)(1))), *aff'd*, 154 Fed. App'x 212

(Fed. Cir. 2005).  However, such an outcome is not the legal impossibility that defendants

suggest.  Accordingly, a remand is appropriate so that the Board may decide the issue for itself.

"[T]he Board is of course free to decline to consider plaintiff's claim on the merits, but if it

continues to follow that course, it will have to articulate its reasons for doing so."  *Roberts v.*

*Harvey,* 441 F. Supp. 2d 111, 122 (D.D.C. 2006); *Kreis*, 866 F.2d at 1512 ("The court would

only require the Secretary, on remand, to explain more fully the reasoning behind his decision

and, with respect to his denial of a retroactive promotion, to apply the appropriate legal

standard.").

## CONCLUSION

For the foregoing reasons, the Court vacates the ABCMR's decision of May 13, 2008.

The Court denies defendants' motion for summary judgment, grants plaintiff's cross-motion for

summary judgment, and remands this case to the ABCMR for further adjudication consistent

with this opinion.  A separate order accompanies this Memorandum Opinion.


                              /s/
                        ELLEN SEGAL HUVELLE
                        United States District Judge


Date:   February 11, 2009